**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| GREGORY R. RAGLE,             § | |
|     PLAINTIFF,             § | |
| § | |
| VS.             § | CIVIL ACTION NO. 4:06-CV-505-A |
| § | |
| MICHAEL J. ASTRUE,             § | |
| COMMISSIONER OF SOCIAL SECURITY,   § | |
|     DEFENDANT.             § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.   STATEMENT OF THE CASE

Plaintiff Gregory R. Ragle brings this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for disability benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act.

Ragle applied for SSI benefits on May 15, 2002, and disability insurance benefits on June 10, 2002, alleging disability commencing June 15, 2001 due to a schizophrenia disorder. (Tr. 13, 87). After the Social Security Administration denied his application initially and on reconsideration, Ragle requested a hearing before an administrative law judge (the "ALJ"). ALJ Jimmy N. Coffman

held a hearing on October 21, 2003 in Lubbock, Texas. (Tr. 384). Ragle attended the hearing with his representative. On November 21, 2003, the ALJ issued a decision that Ragle was not disabled or entitled to benefits because he retained the ability to perform substantially all of the requirements of medium work.[1] (Tr. 13). The Appeals Council denied Ragle's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B.    STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the

---

[1] Medium work involves lifting no more than fifty pounds at a time, with frequent lifting or carrying of objects weighing up to twenty-five pounds. 20 C.F.R. § 404.1567(c), 416.967(c).

**Findings, Conclusions and Recommendation
of the United States Magistrate Judge**—Page 2 of 15

claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.  ISSUES

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge—Page 3 of 15**

       1.      Whether the ALJ failed to properly analyze Ragle's mental impairment

           a.      by not adhering to the prescribed technique;

           b.      by finding that alcohol abuse was a material and continuing factor in Ragle's disability; and

           c.      by failing to find that Ragle's condition met or medically equaled a per se disabling listed impairment.

       2.      Whether the ALJ erred in using the Medical-Vocational Guidelines and failing to obtain vocational expert testimony at Step Five of the sequential evaluation process.

D.      ADMINISTRATIVE RECORD

       1.      Treatment History

The administrative record provides the following information about Ragle's impairments and history of mental health treatment: Ragle has been diagnosed with schizophrenia, and he has reported hearing voices on occasion. (Tr. 137, 265, 276). In addition, vocational testing indicates that Ragle's IQ is 75, which is considered mildly below normal. (Tr. 115).

Ragle has a criminal history, primarily for intoxication-related offenses, and attended counseling sessions from late 2001 through mid-2002 as a condition of parole. (Tr. 139-304 ). Ragle's treating psychiatrist, Robert Mims, M.D., reported in November 2001 that Ragle had not heard voices in approximately ten months, and now that he was taking medication for his condition, he was sleeping well and had a good appetite; however, Ragle was feeling depressed because of his current circumstances. (Tr. 276). Ragle stated that his last substance abuse was eight years earlier. Ragle exhibited a depressed mood and was somewhat anxious during the interview, but Mims did not consider him to be disabled. (Tr. 278, 279). Mims assessed a current Global Assessment of

Functioning (GAF) score of 39.[2]

As part of the disability application process, Ragle underwent a consultative evaluation with psychiatrist Arun Patel, M.D., in September 2002. (Tr. 305). Ragle reported that he began experiencing auditory hallucinations seven years earlier, with additional symptoms of paranoia and severe anxiety. When he was on medications, the voices were better controlled and were rather rare. (Tr. 305). Ragle also reported several episodes of depression over the years, and at the time of the evaluation, he was feeling mildly depressed and anxious. He lived with his mother, who also had schizophrenia. His mother was in charge of their finances. (Tr. 305).   Ragle admitted having a history of cocaine and marijuana use, but alcohol was his drug of choice. He reported that his last drink was three months earlier.

On examination, Ragle was shabbily dressed and looked tired. (Tr. 306). He exhibited mild psychomotor retardation and slowed speech. His thoughts were organized and not psychotic, with no delusions. His mood was mildly depressed and mildly anxious, and his affect was blunted. Ragle was oriented to time, place, and person. (Tr. 306). His fund of general knowledge was below-average. His insight was assessed as fair, with fair to adequate judgment. His memory and concentration, with effort, were measured as intact. Patel assessed a schizoaffective disorder, with a current GAF score of 50.[3] (Tr. 307).

During an interview at the Lubbock Regional Mental Health Mental Retardation Center on

---

[2] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994)(DSM-IV). A GAF score of 31-40 reflects some impairment in reality testing or communication (e.g., speech that is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. *See id.* at 34.

[3] A GAF score of 41 to 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). DSM-IV at 34.

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge—Page 5 of 15**

January 28, 2003, Ragle complained that his current medications were not effective because he continued to struggle with a loss of appetite and constant paranoia. (Tr. 346). He was advised to report these symptoms to his doctor.

Ragle consulted psychiatrist Victor Gutierrez, M.D., in February 2003. (Tr. 344). Ragle reported periods of paranoia that caused him to be suspicious and hypervigilant. Ragle was unable to leave his house most of the time unless accompanied by his mother, and reported that he was unable to hold a job because he was suspicious of co-workers. Ragle admitted using marijuana and alcohol as recently as three months ago. On examination, Ragle's speech was coherent and goal-directed. His memory was good, but Ragle's thought process revealed paranoid delusions and he reported occasional auditory hallucinations. (Tr. 345). His judgment and insight were assessed as good. Gutierrez diagnosed schizophrenia, paranoid-type, and assessed a current Global Assessment of Functioning (GAF) score of 45. (Tr. 345).

Ragle saw his counselor on March 12, 2003, and complained that his medications were too sedating and he feared he would be unable to work because of his decreased energy; however, his medication was controlling the paranoia. (Tr. 341). His medications were changed in response to his complaints of side-effects. On March 26, 2003, Ragle reported that he was doing fine, and he had no complaints about his current medications. He said he helped his mother around the house and ran errands. (Tr. 337). During visits in May and July 2003, Ragle complained of increased hallucinations and increased paranoid ideations, and his prescription for Paxil was discontinued at his request. (Tr. 331-34).

2.   Administrative Hearing

Ragle testified that he was born August 30, 1967. He dropped out of high school, but later obtained a GED and certification as a nurse's aide. (Tr. 386-87). He had most recently worked for McDonald's, but quit after one week because of his paranoia and because he could not handle the work pace. (Tr. 387). He had also worked as a banquet waiter for approximately one year and as a delivery driver for nine months, but paranoid thoughts interfered with his performance. (Tr. 390).

Ragle testified that he realized he had a mental disorder when he began to hear voices several years earlier. (Tr. 387-88). He was given medication that helped for a while, but he had recently stopped taking his medication. Ragle testified that his paranoid feelings were hard to describe, but he sometimes feared leaving his house and was unable to look for work. (Tr. 389-90). He testified that he watched television during the day, and he also took care of his mother because she was ill. He was able to sleep only a couple of hours each night, which caused headaches and fatigue during the day. Ragle also testified that he felt hopeless. (Tr. 392). Ragle testified that his energy level had declined after he started taking medication for his mental disorder. He used to ride a bicycle or run for exercise, but no longer had the energy for these activities. (Tr. 392).

The ALJ questioned Ragle about his history of substance abuse, and Ragle testified that he had two or three arrests for public intoxication and additional arrests for driving while he was intoxicated. He had been imprisoned at least once for driving while intoxicated, but had a current driver's license. (Tr. 393). Ragle admitted recently having a drink, but testified that it was his first alcoholic drink in eight months. (Tr. 394). He also testified that he had smoked marijuana less than a year ago, but he had not used cocaine in ten years. (Tr. 395).

3. ALJ Decision

The ALJ found that Ragle had not engaged in substantial gainful activity since June 2001, and further found that Ragle's schizophrenia disorder constituted a severe impairment. (Tr. 15). The ALJ found that Ragle met Listing 12.09 if his alcohol use was considered, but otherwise his impairment failed to meet or medically equal any listed impairment. (Tr. 15). Instead, the ALJ found that Ragle retained the ability to perform medium work activity, limited by a need for jobs requiring only superficial interaction with the public and co-workers. (Tr. 17). The ALJ found Ragle was unable to perform his previous work, but using the Medical-Vocational Guidelines as a framework, the ALJ found that Ragle was not disabled because he retained the ability to perform substantially all of the requirements of medium work. (Tr. 19). *See generally* 20 C.F.R. Part 404, Subpart P, app. 2, Table 3, Rule 203.29. Accordingly, the ALJ concluded that Ragle was not entitled to disability insurance benefits or SSI payments. (Tr. 20).

D. DISCUSSION

1. Assessment of a Mental Impairment

Ragle contends the ALJ's assessment of his mental impairment and its effect on his residual functional capacity is unsupported by substantial evidence and reflects an inadequate analysis of Ragle's mental impairment. The Social Security disability regulations outline a process (referred to as "the technique") to be used for evaluation of mental impairments. First, symptoms, signs, and laboratory findings are evaluated to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Once an impairment is found, the administration will rate the degree of functional limitation resulting from the impairment. *Id*. §§ 404.1520a(b)(2), 416.920a(b)(2). Four broad functional areas are recognized: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of

decompensation. *Id*. §§ 404.1520a(c)(3), 416.920a(c)(3). After rating the claimant's functional limitations, the administration determines whether the impairment is severe or not severe given the degree of functional loss found in the four given areas. *Id*. §§ 404.1520a(d), 416.920a(d). If the impairment is considered severe, the administration determines if the impairment meets or is equivalent in severity to a listed impairment. *Id*. §§ 404.1520a(d)(2), 416.920a(d)(2). If the claimant has a severe impairment that neither meets nor medically equals a listed impairment, the adjudicator proceeds to an assessment of the claimant's residual functional capacity. *Id*. §§ 404.1520a(d)(3), 416.920a(d)(3).

A review of the ALJ's decision reflects that the ALJ followed the appropriate technique.[4] The ALJ found that Ragle had a medically determinable impairment that was severe: schizophrenia. The ALJ further found that, when Ragle's use of alcohol was considered, his impairment met the criteria of Listing 12.09, which addresses substance addiction disorders; however, when alcohol was not considered, Ragle's impairment did not meet or medically equal the severity of any listed impairment.[5] (Tr. 15).

The Contract with America Advancement Act of 1996 (CAAA), Pub. L. No. 104-121, 110 Stat. 847, amended the Social Security Act and renders individuals ineligible to receive disability insurance or SSI benefits if alcoholism or drug addiction is a contributing factor material to the

---

[4] At the initial and reconsideration levels, a standardized document referred to as a Psychiatric Review Technique Form (PRTF) is prepared to record how the technique has been applied. *Id*. §§ 404.1520a(e)(1), 416.920a(e)(1). At the ALJ and Appeals Council levels, the written decision itself incorporates the pertinent findings and conclusions based on the technique, including specific findings as to the degree of limitation in each of the functional areas. 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2).

[5] The ALJ found that, when alcohol was considered, Ragle was moderately restricted in daily activities, markedly restricted in social functioning, markedly deficient in concentration, and had experienced one or two episodes of decompensation. (Tr. 17). When alcohol was excluded from consideration, Ragle was mildly restricted in his daily activities, moderately restricted in social functioning, and mildly deficient with respect to his concentration. (Tr. 17).

Commissioner's determination that the individual is disabled. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). *See also* 20 C.F.R. §§ 404.1535, 416.935. In accordance with the CAAA and related regulations, after finding that Rable's alcohol abuse was a contributing and material factor to his disability in this case, the ALJ excluded Ragle's alcohol use when applying the prescribed technique and proceeded to an assessment of Ragle's residual functional capacity.

Ragle, however, contends that the ALJ erred in finding that alcohol abuse was a material or contributing factor to his disability because there is evidence in the record that Ragle's mental impairment was disabling even when he was not using alcohol. He admits that he had occasionally used alcohol or drugs to "self-medicate" in an effort to control symptoms, but contends that this use did not cause his symptoms as illustrated by evidence of the severity of his symptoms when he was incarcerated and alcohol was inaccessible.

Ragle was on parole during the relevant time period, not incarcerated. Moreover, the ALJ found Ragle's testimony was not credible given that he always reported that it had been "just a few month since his last drink," and admitted at the hearing that he had stopped taking his medication. (Tr. 16). The medical records indicate that Ragle's symptoms were alleviated when he was compliant with his treatment regiment. Impairments amenable to medication or other treatment are not considered disabling. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988). The ALJ also found that Ragle's depression and anxiety were not, in and of themselves, incompatible with all levels of work activity. (Tr. Tr. 16). Ragle complains that the ALJ did not give sufficient weight to his relatively low GAF scores, but Ragle cites no authority suggesting that a GAF score is determinative of a claimant's ability to work or should be viewed in isolation and without regard to other evidence in

the record.[6]  The findings in the reports from both of Ragle's treating psychiatrists and the consultative examiner likewise support the ALJ's determination that Ragle's mental impairment was not disabling independent of his use of alcohol.[7]  *See* 20 C.F.R. §§ 404.1535(b), 416.935(b).

Ragle's argument that his schizophrenia meets or medically equals the severity of Listing 12.03[8] is also unpersuasive.  Ragle contends that he has medically documented persistent delusions

---

[6] Ragle's reliance on *Bennett v. Barnhart*, 264 F. Supp. 2d 238 (W.D. Pa. 2003), is distinguishable because that case involved the ALJ's determination of a non-severe mental impairment at Step 2 of the sequential evaluation process.

[7] Ragle notes that consulting examiner Patel's report includes the notation "Unable to work because of symptoms of auditory hallucinations and depression." (Tr. 306).  This notation appears within the portion of Patel's report that documents information relayed by Ragle, but to the extent it could be construed as Patel's opinion it does not undermine the ALJ's decision.  Opinions that a claimant is disabled or unable to work are opinions on issues reserved to the Commissioner and are not given any special significance.  20 C.F.R. § 404.1527(e)(1), (3).

[8]  Listing 12.03 reads:

**12.03 Schizophrenic, paranoid and other psychotic disorders**: Characterized by the onset of psychotic features with deterioration from a previous level of functioning.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one or more of the following:
    1. Delusions or hallucinations; or
    2. Catatonic or other grossly disorganized behavior; or
    3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
        a. Blunt affect; or
        b. Flat affect; or
        c. Inappropriate affect; or
    4. Emotional withdrawal and/or isolation;
AND
B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration;
OR
C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
    1. Repeated episodes of decompensation, each of extended duration; or
    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

or hallucinations, which satisfy the "A Criteria" of Listing 12.03, and the ALJ has found that he suffers marked difficulty maintaining social functioning and marked difficulty maintaining concentration, which meet the "B Criteria" for Listing 12.03. Ragle is overstating the impairment the ALJ found as a result of his schizophrenia disorder, and instead is relying on the level of impairment the ALJ found when Ragle's use of alcohol was considered. Absent the use of alcohol, his impairment was found to cause only mild deficiencies in concentration and moderate deficiencies in social functioning.[9] Ragle has not shown either a lack of substantial evidence or legal error that would justify disturbing the Commissioner's determination that Ragle's alcohol use was a material and contributing factor or the determination that Ragle did not meet or medically equal the criteria of a listed impairment when alcohol use was excluded from the decision.

2.     Lack of Vocational Expert Testimony

Ragle contends that the ALJ erred at Step Five of the sequential evaluation process by utilizing the Medical-Vocational Guidelines instead of vocational expert testimony in finding that Ragle was not disabled. The Medical-Vocational Guidelines are a set of tables containing data that reflect an analysis of major functional and vocational patterns with respect to a person's ability to engage in substantial gainful activity . 20 C.F.R. § 404.1569; 20 C.F.R. Part 404, Subpart P, app. 2, § 200.00. Use of the Guidelines is appropriate when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect

---

> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpart P, app. 1, § 12.03.

[9] The state agency medical consultants who reviewed Ragle's file found that Ragle's schizophrenia and polysubstance dependence resulted in mild restrictions in his activities of daily living; moderate difficulty maintaining social functioning; mild difficulty maintaining concentration, persistence or pace; and one or two episodes of decompensation of extended duration. (Tr. 324).

**Findings, Conclusions and Recommendation
of the United States Magistrate Judge—Page 12 of 15**

his residual functional capacity. *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999). Otherwise, the ALJ must rely upon expert vocational testimony or other similar evidence to establish that other work exists. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987); *Lawler v. Heckler*, 761 F.2d 195, 197-98 (5th Cir. 1985). *See also* SOCIAL SECURITY RULING 85-15 (noting that extent to which nonexertional impairment erodes occupational base may range from very little to very much, and may require consultation with vocational resource); SOCIAL SECURITY RULING 83-14 (directing adjudicator to use vocational resource absent clear understanding of effects of additional limitations on exertional occupational base).

Ragle complains that the Commissioner did not meet his burden at Step Five because the ALJ relied on the Guidelines and did not obtain appropriate vocational evidence about the work-related impact of Ragle's need to avoid more than superficial interaction with the public or co-workers. The ALJ found that Ragle retained the residual functional capacity to perform medium work activity and that his ability to perform the full range of work was "somewhat compromised" by his need for jobs requiring only superficial interaction with the public or co-workers. (Tr. 17). But elsewhere in his decision, and without obtaining vocational expert testimony or citing other sources of vocational evidence, the ALJ found that Ragle's nonexertional limitations would not necessarily erode the occupational base and that Ragle's capacity for medium work was substantially intact and not compromised by any nonexertional limitations. (Tr. 18-19). The ALJ also stated that he was using Rule 203.29 in the Medical-Vocational Guidelines as a "framework" for his decision that Ragle was not disabled. (Tr. 19).

The ALJ's decision is confusing: He appears to recognize that the existence of a nonexertional impairment precludes direct application of the Guidelines and that the Guidelines provide only a

frame of reference for his analysis, but then he does not explain or cite any evidence to support his decision that the occupational base is not eroded by this same nonexertional impairment. *See Allsbury v. Barnhart*, 460 F. Supp. 2d 717, 726 (E.D. Tex. 2006)(reversing administrative decision because ALJ did not articulate basis for or recite evidence supporting use of Guidelines as framework for assessing disability of claimant with nonexertional impairments and ALJ elicited no vocational expert evidence at Step Five). In finding Ragle had no compromising nonexertional limitations, the ALJ contradicts his own earlier findings without explanation and without the support of the record.[10] Reversal and remand of the Commissioner's decision is necessary so that the internal inconsistencies in the administrative decision can be resolved and vocational expert evidence can be obtained with respect to the impact of Ragle's nonexertional limitations on his ability to work.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with these proposed findings of fact and conclusions of law.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions

---

[10] The problems in the ALJ's decision are also illustrated by the ALJ's determination that Ragle could not perform his past relevant work even though his previous jobs fell within his exertional capacity. (Tr. 17).

**Findings, Conclusions and Recommendation of the United States Magistrate Judge—Page 14 of 15**

and recommendation until June 22, 2007. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until June 22, 2007, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED June 1, 2007.

 /s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE